IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC. | ) | |
| | ) | |
| and DELAWARE AUDUBON SOCIETY, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 88-263-SLR |
| v. | ) | |
| | ) | |
| TEXACO REFINING AND MARKETING, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF DR. ALLEN D. UHLER

I, ALLEN D. UHLER, PH.D, declare as follows:

1.    I am a senior scientist at Newfields Companies, LLC. I have been employed at
Newfields since 2004. I hold a Bachelors of Arts in Chemistry from The State University
of New York at Plattsburgh, and a Masters of Science and a Ph.D. in chemistry from the
University of Maryland. My particular area of expertise is a discipline commonly
referred to as environmental forensics - the application of advanced chemical analyses to
determine the nature, sources, and fate of hydrocarbons and industrial chemicals in the
environment.

2.    I have over 20 years of experience working in the field of environmental
chemistry. After receiving my Ph.D. in 1983, I served 2 years in a postdoctoral position
and as a faculty research associate with Dr. Jay C. Means at the University of Maryland's
Chesapeake Biological Laboratory where along with other topics, I studied the
environmental fate of polycyclic aromatic hydrocarbons ("PAHs") in the environment.
In 1985, I accepted a 2 year postdoctoral fellowship with the United States Food and
Drug Administration, where I developed specialized analytical methods for the
measurement of chemical contaminants in the nation's food supply. During this time, the
Commissioner of the FDA appointed me as a special liaison to the U.S. EPA, as part of a
joint agency task force to improve analytical chemistry methods for environmental
sciences. In 1987, I joined Battelle Memorial Institute, the nations largest not-for-profit
research organization. I worked at Battelle for the next 17 years as a senior chemist and
consultant in the environmental chemistry group. During my tenure, I conducted applied

environmental research for government and industry on issues pertaining to the occurrence, identification, and fate of PAHs in aquatic and terrestrial environments.

3.      In the past 20 years, I have authored or co-authored over 150 professional papers, text book chapters, and presentations, regarding the analysis, occurrence, distribution and fate of chemicals in the environment. Among these works are over 25 on the subject of identifying the nature and sources of PAHs in the environment, including a recent peer reviewed journal article[1] that describes the chemical "fingerprinting" of PAHs carried out to comply with the February 22, 2000 order issued by this Court. I was founding co-editor and now serve on the editorial board of the journal *Environmental Forensics*. I am a founding member of the American Society for Testing and Materials ("ASTM") International Subcommittee E50.06, *Forensic Environmental Investigation*.

4.      I have extensive technical experience in matters pertaining to PAH contamination in waterways. I have developed analytical methods for the measurement of PAHs in water and sediment. I have participated in dozens of investigations related to the occurrence, sources, and fate of PAHs in the environment. I have significant experience in the use of data analysis techniques to determine relationships among the chemical composition of samples and suspected sources, and differentiating types and sources of PAHs in complex industrial and urban settings.

        A.    ***Background***

5.      In 1999, I was contacted by Mr. Lenwood Hall of the University of Maryland who asked me to participate in a multi-disciplinary investigation to assess the potential ecological effects of effluent from Motiva Enterprise LLC Delaware City Refinery ("Refinery"). I assisted Mr. Hall in the preparation of certain sections of the November 6, 2000 scope of work ("SOW") that describes the details of the investigation required by the February 22, 2000 order ("Court Order") issued by this Court. In particular, I helped prepare sections of the SOW pertaining to:

- Analytical measurement of PAHs and other chemical substances necessary to support the investigation;
- Chemical characterization of the effluent from the Refinery; and
- Fingerprinting of the PAHs in Refinery effluent, sediments and biological tissues from the river.

6.      The multi-year study culminated in a December 2003 report entitled *A Baseline Study for Accessing the Potential Aquatic Ecological Effects from Motiva Enterprises, LLC Delaware City Refinery Effluent Using the Sediment Triad Approach* ("Motiva Study"). For the Motiva Study, I was responsible for chemical measurements conducted at the Battelle Memorial Institute environmental chemistry laboratory. Under my direction, certain colleagues at Battelle worked with me to prepare the sections of the Motiva Study pertaining to fingerprinting of PAHs, notably section 7, entitled *Advanced Chemical Fingerprinting of PAHs*.

2

7.      I have thoroughly reviewed a document dated July 2005, submitted by the plaintiffs in this matter entitled *Review of Motiva Study and Independent Analysis of Study Data* prepared by Dr. Robert J. Livingston ("Livingston Review").

     **B.**    *Summary of Opinions*

8.      As explained in more detail below, my opinions can be summarized as follows:

     I.    PAH "fingerprinting" is a procedure that utilizes chemical concentrations of PAHs, and can not be accomplished with loadings, as called for by plaintiffs' expert, Dr. Livingston;

     II.    The PAH "fingerprinting" and chemical measurements that I carried out complied fully with the Court Order and the SOW, and were conducted in a manner fully consistent with the methodologies that are described in the literature and government guidance documents; and

     III.    The results of PAH fingerprinting in sediments from the Delaware River area described in the Motiva Study are consistent with reports published in the scientific literature, and demonstrate clearly that the river system receives significant PAH inputs from numerous non-Refinery sources, which is typical of urbanized river systems.

     **C.**    *Basis for Opinions*

     **I.**    *PAH Fingerprinting, Which Was Required By The Court Order, Is Fundamentally Different From PAH "Loading"*

9.      The bases for my opinion that PAH "fingerprinting" is a procedure that utilizes chemical concentrations of PAHs, and cannot be accomplished with loadings, as called for by plaintiffs' expert Dr. Livingston, are as follows:

     a.    The Livingston Review indicates that the processes I followed for "fingerprinting" and the tracking the fate of Refinery PAHs for the Motiva Study is flawed because I relied upon PAH concentration data, and ignored PAH loading. In fact, there is a fundamental difference between PAH "fingerprinting" studies and PAH loading studies. Dr. Livingston's assertions are erroneous because they simply ignore that difference.

     b.    PAH "fingerprinting" relies upon the comparison of PAH concentration patterns from suspected sources, to the PAH concentration patterns measured in potentially impacted environmental samples. In the case of the Motiva Study, the PAH "fingerprinting" process compared the PAH signature of the Refinery effluent against the residual PAH concentration patterns in sediments in the area being studied near the Refinery. Thus, the PAH "fingerprint," which can also be called the Refinery PAH signature, is

the pattern formed by the concentration of the individual PAHs detected. Concentration data had to be used because PAH "fingerprinting" is based on concentration data. Any attempt by Motiva to "fingerprint" PAHs utilizing non-concentration data could not have been considered PAH "fingerprinting" and, therefore, could not have complied with the Court Order.

c.   The concept of PAH "fingerprinting" is distinct and fundamentally different from the type of PAH loadings study suggested by the Livingston Review. Loading of PAHs is a measure of the total mass of PAH compounds that enter a receiving environment in a given period of time. In a system like the Delaware River, with many sources of PAHs, the loading from any one particular source to the river can be meaningfully interpreted only if the PAH input from all sources have been identified and measured. With such information, an investigator may be able to determine the percentage of total mass of PAHs, *i.e.* the relative contribution, contributed to a river *system* by a particular source. However, without such information, the investigator cannot possibly understand the relative contributions from the various sources of any particular PAH compounds. This limitation does not apply to "fingerprinting" as the patterns exhibited by concentration data developed by PAH "fingerprinting" techniques can be used to identify the specific signature of a particular source.

d.   Further, even with such information, loading calculations can provide no information regarding the fate of PAHs released into a river system. The only information provided gives the total mass of a contaminant that has been released into a river system. However, such calculations cannot provide information regarding how releases of that contaminant from a particular source may have been distributed in river sediments. In other words, the investigator cannot link PAHs detected in any one sample, or group of samples, with particular sources. PAH "fingerprinting" studies may identify the chemical residue of PAHs in the sediment from a particular source, regardless of the total quantity of that contaminant released by that source, or other sources.

e.   Thus, although suggested in the Livingston Review, a loading study would have been a particularly inappropriate procedure for identifying the source of the PAHs detected in water and sediment samples by the Motiva Study. The problems would likely have become obvious even to the author of the Livingston Review, if the author had recognized sources other than the Refinery. The Motiva Study detected significant concentrations of PAHs in Delaware River water at locations for which the Refinery could not have been the source. These concentrations indicate that urban background and other non-Refinery sources account for the vast majority of PAHs to the Delaware River estuary. Thus, even if all such non-Refinery sources had been identified and measured, a loadings study could not identify the source

4

of PAHs measured at any particular location. Such identification is possible only with PAH "fingerprinting" techniques.

f.    Notable, the Court Order specifies a "fingerprinting" study, but not a loading study, of PAHs in the Delaware River. Loading studies in a large complex river system are remarkable daunting undertakings because contributions of chemicals of concern such as PAHs from *all* point and non-point sources must be identified and measured. An entire scientific and regulatory discipline, termed Total Maximum Daily Load, has developed to address the issues of loading.[33] Because of the complexities involved, river loading studies can take years to complete. In the Delaware River, a loading study for polychlorinated biphenyls ("PCBs") required more than a decade to finish, and continues to undergo revision.[34] A rigorous loading study of PAHs to the Delaware River has yet to undertaken, but the multitude and complexity of sources of PAHs of the Delaware River[35] suggests that such an undertaking would as or more complex than the lengthy PCB study.

g.    In summary, PAH "fingerprinting" investigations based on PAH concentrations are distinct and separate from PAH loading studies. Loading studies attempt to quantify the mass per unit time of PAHs introduced in the river system relative to the mass in the same unit of time from other sources. However, loadings do not consider the ultimate fate of PAHs in the river system. PAH "fingerprinting" studies attempt to identify the chemical patterns of residual PAHs from the sources, *e.g.*, the Refinery effluent, in water and sediments of the Delaware River. The PAH "fingerprinting" investigation that was carried out as part of the Motiva Study in compliance with the Court Order, resulted in a thorough and rigorous assessment of the PAHs in sediments in waters of the Delaware River in the area being studied, arising from Refinery discharges.

## II.    *The Court-Ordered PAH Fingerprinting Study Complied Fully With The Court Order And The Scope of Work*

10.    The bases for my opinion that the PAH "fingerprinting" and chemical measurements that I carried out complied fully with the Court Order and the SOW, and were conducted in a manner fully consistent with the methodologies that are described in the literature and government guidance documents are as follows:

a.    Prior to preparing my contributions to the November 6, 2000 Scope of Work, I carefully studied the requirements imposed by the Court Order. In addition, I carefully reviewed the technical criteria articulated in the 1997 Means Report with regard to "fingerprinting" and chemical measurements.

b.    I ensured that the technical elements of the SOW regarding fingerprinting were consistent with the requirement of the Court Order that "fingerprinting of PAHs from refinery effluent will be compared to PAHs in the sediment." In the ensuing investigation, the PAH chemicals for which analyses were conducted included the 16 PAH compounds that are often referred to as the U.S. EPA priority pollutant PAH compounds, the PAH chemicals identified by the 1997 Means Report, and a suite of other PAH compounds that have proven to be useful for accurate PAH "fingerprinting." Inclusion of this latter list of PAH compounds went beyond the requirements of both the Court Order and the 1997 Means Report, thus, providing additional robust data for both fingerprinting and other environmental fate studies conducted as part of the Motiva Study.

c.    The analytical methods used in this program was specifically designed for PAH analysis and "fingerprinting." The methods were tailored to achieve reporting limits for individual PAH compounds approximately 100 to 1000 times lower than the conventional U.S. EPA methods of analyses[2]. These lower limits were needed to detect and measure PAHs in the samples of the Delaware River. The analytical chemistry elements of the investigation was carried out under strict well-documented quality controlled and quality assurance procedures following EPA guidelines.[3] The data formed a technically sound basis on which conclusions regarding PAH identification, fate and effects in the investigation could be reliably based.

d.    I ensured that the SOW was compliant with other requirements of the Court Order that depended on analytical chemistry support, including Section 1(a) - *Sampling Site Selection*, Section 1(c) - *Fate and Transport*, Section 1(d) - *Bioavailability*, Section 1(e) - *Record of Chemistry Measurements*, Section 1(h) - *Tissue Analysis*, Section 1(i) - *Consistency of Metals Analysis and Section*, and Section 1(j) - *Long Core Analysis*.

e.    Chemical fingerprinting of PAHs and petroleum residue in the water, sediment, biota, and in terrestrial soils, is a discipline that has evolved over more that 20 years of scientific research, and backed by hundreds of publications in the peer-reviewed literature. *See* References 4 through 28, and the citations therein.

f.    PAH fingerprinting techniques predicated on analytical chemistry, coupled with data interpretation methods developed over the last 2 decades, have been adopted by Federal and State regulatory agencies for use in identifying sources of PAH contaminated sediment. For example, PAH "fingerprinting" following the 1989 *Exxon Valdez* Oil Spill has been used by Federal Agencies, and the ExxonMobil Corporation for more than 15 years. Recently, the U.S. Navy has developed a guidance document for determining the source of PAHs in contaminated sediments.[29, 30] The

protocols that I used in the Motiva Study are the same advanced chemistry and data interpretation techniques adopted by the U.S. Navy guidance.

g.   The fundamental premise of PAH "fingerprinting" is the recognition that: a) there are literally thousand of naturally occurring PAH compounds in petroleum, tars, combustion wastes such as automobile exhaust, soot particulates from fires, and urban runoff; b) the PAH compounds co-occur in all these "source" materials; and c) the relative distribution in concentration of the individual PAH compounds from these various "source" materials are distinctive because of the manner in which the PAH compounds were formed. Hence, different sources of PAHs may have distinct PAH concentration patterns that can be identified in the environment. These PAH patterns comprise the "fingerprint" of the many varied sources that can be encountered in the environment.

h.   No one PAH compound found in an environmental sample can be directly linked to a particular source, since there are many PAH compounds that are common among the multitude of potential PAH sources. In the case of the Delaware River, the PAH compounds found in the sediments are common not only to the Refinery effluent, but to the myriad of potential sources of PAHs, and particularly ubiquitous urban background.[20] Much like true fingerprinting, the PAH "fingerprinting" process depends on identifying patterns of PAH compounds for particular sources, *e.g.*, the Refinery effluent, tracking that fingerprint in the environment, and differentiating that fingerprint from those of other sources. Implication of a suspected source responsible for PAH inputs to impacted samples of sediments can only be accomplished by matching the PAH patterns from the suspected source to the PAH patterns of the impacted samples.

i.   PAHs found in suspected sources and impacted environmental samples occur in complex patterns. The ability to compare, contrast, and ultimately match these PAH patterns can be done in a number of ways. The simplest is to visually compare charts that present relative concentrations of the individual PAHs, and then group together the samples of similar composition. However, when dealing with large numbers of samples such as in the Motiva Study, a visual comparison is often too subjective, and can overlook complexities in the data that may be critically important for purposes of identifying the PAH sources. More sophisticated PAH "fingerprinting" techniques have been developed in recent years to expose pattern relationships among a large number of samples, and thereby provide a more objective means to identify the source of PAHs.[16, 20, 30] One such technique is called principal components analysis ("PCA"). The PCA method has gained favor in recent years as a PAH fingerprinting tool, e.g., it is one of the principal fingerprinting techniques advanced by the U.S. Navy in assessing sources of PAH to contaminated sediments.[30]

7

j.    For the fingerprinting component of the Motiva Study, I used both simple pattern comparison techniques, and the advanced numerical analysis method PCA. Together these methods provided the most insightful means to identify the chemical signature of Refinery PAHs, to recognize them in the sediments or waters of the Delaware River, and to distinguish them from PAHs that arise from the multitude of other sources.

k.    The Livingston Review is critical of my use of the PCA data analysis, largely because of the erroneous assumption that the mere presence of certain PAH compounds in river sediment are sufficient to implicate the Refinery as their source. This assumption underscores a basic misunderstanding of the complex nature of PAHs, their common occurrence in the environment, and the methodologies that are commonly used in the scientific literature for "fingerprinting" sources of PAHs.

l.    In summary, PAH fingerprinting methods used for the Motiva Study were rigorous and well recognized, and fully compliant with the Court Order for PAH fingerprinting. A paper summarizing the fingerprinting analysis that was conducted for the Motiva Study has been published in the peer-reivewed literature and appears in the August 2005 issue of *Human and Ecological Risk Assessment*.[1]

### III.   *The Results of the PAH Fingerprinting Study Demonstrate That The Delaware River Receives Significant PAH Inputs From Numerous Non-Refinery Sources*

11.    The bases for my opinion that the results of PAH fingerprinting in sediments from the Delaware River area described in the Motiva Study are consistent with reports published in the scientific literature for urbanized and industrialized waterways, and demonstrate clearly that the river system receives significant PAH inputs from numerous non-Refinery sources, are as follows:

a.    The PAH "fingerprinting" results of sediments in the Delaware River reported in the Motiva Study are consistent with similar studies of PAHs in urbanized waterways, including the Delaware River, described in peer-reviewed literature and professional reports. In terms of both concentration and PAH "fingerprints," results reported in the Motiva Study are strikingly similar to the features of PAHs found in typical urban waterways.[5, 7, 11, 18, 20, 21, 22, 24, 25] Further, the evaluation of sediments collected for refineries reported in the 1997 Means Report indicate that while the patterns of PAHs in the vicinity of refineries are complex and site specific, most sediments in the vicinity of refineries have PAH profiles and concentrations consistent with urban background. The results of the PAH fingerprinting and sediments from the Delaware River described in the Motiva Study are

similar, and fully consistent with that of an urbanized river system receiving significant PAH inputs from the numerous point and non-point sources. Importantly, the Livingston Review presents no data, analyses, or references that suggest there is no such consistency.

b.    The Livingston Review discusses a mathematical parameter, defined as the concentration of the total PAHs divided by the concentration of total organic carbon, usually abbreviated and referred to as "TPAH/TOC." The author finds that in certain areas proximal to the Refinery the TPAH/TOC are elevated, and concludes that these elevated levels are indicative of PAH inputs from the Refinery. However, the Livingston Review fails to consider typical relationships between TPAH and TOC in sediment, and contribution of PAHs coming from general urban background. In fact, the concentrations of TPAH/TOC measured in the sediments during the Motiva Study are consistent with those reported in the 1994 river-wide survey of PAHs in the Delaware River, conducted by Arthur D. Little ("ADL") for the U.S. EPA, and the Delaware Basin Commission. In that study, ADL collected sediments from stations beginning in the mid-bay portion of the Delaware Bay at the mouth of the Delaware River, and ranging as far upriver as Torresdale, PA (River Mile 115). Several stations were in the vicinity of the Refinery study area. ADL analyzed a suite of PAHs that are directly comparable to PAHs analyzed for the Motiva Study.

c.    A comparison of TPAH/TOC between the ADL Study and the Motiva Study demonstrate that PAH concentrations in the sediments from the Motiva Study are consistent with the sediments from the general Delaware River system:

   i.    **ADL Study**

   - mean TPAH/TOC:              349,906 ug/kg
   - minimum TPAH/TOC:           19,635 ug/kg
   - maximum TPAH/TOC:        1,131,740 ug/kg

   ii.   **Motiva Study**

   - mean TPAH/TOC:              204,435 ug/kg
   - minimum TPAH/TOC:            3,440 ug/kg
   - maximum TPAH/TOC:        1,391,077 ug/kg

d.    Furthermore, the PAH fingerprints developed by ADL for the Delaware River sediment survey were consistent with those described in the Motiva Study for sediments outside of the effluent canal influence, *i.e.*, as having PAH fingerprints consistent with the general urban background and inconsistent with the refinery effluent. The ADL investigation concluded that ". . . PAH assemblages [in Delaware River sediments] are attributable

9

to anthropogenic and natural combustion sources via atmospheric fallout and runoff, urban drainage/street runoff, and digenesis." They also note that "a consistent background of pyrogenic [PAHs from combustion sources] and high molecular weight PAHs was evident throughout the estuary."

e.   The concentration and relative distribution of PAH compounds have also been studied in the Delaware River by the United States Geological Survey ("USGS") as part of the National Water Quality Assessment Program ("NAWQA")[35]. More than thirty sediment stations were sampled across the entire watershed between 1998 and 2001. The concentration ranges of individual PAH compounds documented for sediments in the general river system are consistent with those reported by the Motiva Study for sediments in the general vicinity of the Refinery. This data provides additional evidence that the vast majority of sediments found proximal to the Refinery contain PAH concentrations that are consistent with urban background.

f.   These observations about the general nature of PAHs in Delaware River sediments reported by ADL and the USGS, are consistent with the conclusions reached in Section 7 of the Motiva Study which states that beyond the immediate influence of the effluent canal, the PAHs in sediments of the refinery study area were at concentrations consistent with, and had PAH fingerprints characteristics of, Delaware River urban background, and that the majority of PAHs in the Delaware River system area likely originated from urban runoff composed of soot, chronic vehicular droppings, terrigenous biomass, and other non-Refinery sources.

g.   In my opinion, beyond those sediments in the area immediately adjacent to the effluent canal, there is no evidence for PAH impacts different from urban background that could be attributed to the Refinery.

12.   Supporting references referred to in this affidavit are listed below.

*References*

1.   Uhler, A.D., Emsbo-Mattingly, S.J., Liu , B., Hall, L.W. and Burton, D.T. 2005. An Integrated Case Study for Evaluating the Impacts of an Oil Refinery Effluent on Aquatic Biota in the Delaware River: Advanced Chemical Fingerprinting of PAHs. *Human Eco. Risk Ass.* 11: 771 – 836.

2.   Douglas, G.D., W.A. Burns, A.E. Bence, D.S. Page, and P.D. Boehm. 2004. Optimizing detection limits for analysis of petroleum hydrocarbons in complex environmental sample. Environ. Sci. Tech. 38: 3958-3964.

3.   EPA. 2001. EPA Requirements for Quality Management Plans. EPA/240/B-01/002. Office of Environmental Information, Washington, DC.

4.   National Oceanic and Atmospheric Administration. 1998. Sampling and Analytical Methods of the National Status and Trends Program Mussel Watch Project: 1993-1996 Update. NOAA

Technical Memorandum NOS/ORCA/CMBAD 130. National Oceanic and Atmospheric Administration, Silver Spring, MD.

5.  Youngblood, W.W. and Blumer, M. (1975). Polycyclic aromatic hydrocarbons in the environment: homologous series in soils and recent marine sediments. Geochim. Cosmochim. Acta 39, 1303-1314.

6.  Boehm, P.D., Page, D.S., Gilfillan, E.S., Bence, A.E., Burns, W.A., and Mankiewicz, P.J. (1998). Study of the fates and effects of the Exxon Valdez oil spill on benthic sediments in two bays in Prince William sound, Alaska. 1. Study design, chemistry, and source fingerprinting. Environ. Sci. Technol. 32, 567-576.

7.  Douglas, G.S., Bence, A.E., Prince, R.C., McMillen, S.J., and Butler, E.L. (1996). Environmental stability of selected petroleum hydrocarbon source and weathering ratios. Environ. Sci. Technol. 30, 2332-2339.

8.  Eganhouse, R.P., Blumfield, D.L., and Kaplan, I.R. (1982). Petroleum hydrocarbons in stormwater runoff and municipal wastes: input to coastal waters and fate in marine sediments. Thalassia Jugoslavica 18, 411-431.

9.  Garrigues, P., Budzinski, H., Manitz, M.P., and Wise, S.A. (1995). Pyrolytic and petrogenic inputs in recent sediments: a definitive signature through phenanthrene and chrysene compound distribution. Polycyclic Aromatic Compounds 7, 275-284.

10. Kaplan, I.R., Galperin, Y., Lu, S.-T., and Lee, R.-P. (1997). Forensic environmental geochemistry: differentiation of fuel-types, their sources and release time. Org. Geochem. 27, 289-317.

11. Laflamme, R.E. and Hites, R.A. (1978). The global distribution of polycyclic aromatic hydrocarbons in recent sediments. Geochim. Cosmochim. Acta 42, 289-303.

12. Lao, R.C., Thomas, R.S., and Monkman, J.L. (1975). Computerized gas chromatographic-mass spectrometric analysis of polycyclic aromatic hydrocarbons in environmental samples. J. Chromatography 112, 681-700.

13. Lee, M.L., Prado, G.P., Howard, J.B., and Hites, R.A. (1977). Source identification of urban airborne PAHs by GC/MS and high resolution MS. Biomedical Mass Spectrometry 4, 182-186.

14. Marr, L.C., Kirchstetter, T.W., Harley, R.A., Miguel, A.H., Hering, S.V., and Hammond, S.K. (1999). Characterization of PAH in motor vehicle fuels and exhaust emissions. Environ. Sci. Technol. 33, 3091-3099.

15. Sauer, T. C. and Boehm, P. D. (1995). Hydrocarbon chemistry analytical methods for oil spill assessment. Marine Spill Response Corporation Technical Report Series 95-032.

16. Sauer, T.C. and Uhler, A.D. (1994-1995). Pollutant source identification and allocation: advances in hydrocarbon fingerprinting. Remediation, Winter Issue, p. 25-50.

17. Short, J.W., Kvenvolden, K.A., Carlson, P.R., Hostettler, F.D., Rosenbauer, R.J., and Wright, B.A. (1999). Natural hydrocarbon background in benthic sediments of Prince William Sound, Alaska: oil vs. coal. Environ. Sci. Technol. 33, 34-42.

18. Volkman, J.K., Holdsworth, D.G., Neill, G.P., and Bavor, H.J., Jr. (1992). Identification of natural, anthropogenic and petroleum hydrocarbons in aquatic sediments. Sci. Total Environ. 112, 203-219.

19. Stout, S.A., Douglas, G.S. Uhler, A.D., McCarthy, K.J. and Emsbo-Mattingly, S.D. 2005. Identifying the Source of Mystery Waterborne Oil Spills – A Case for Quantitative Chemical Fingerprinting. Env. Claims J. 17(2): 71-88.

20. Stout, S.A., Uhler, A.D., and Emsbo-Mattingly, S.D. (2004) Comparative evaluation of background anthropogenic hydrocarbons in surficial sediments from nine urban waterways. Environ. Sci. Technol., 38(11): 2987-2994.

21. Stout, S.A., Uhler, A.D., Emsbo-Mattingly, S.D. (2003) Urban background – Characterization of ambient anthropogenic PAH in urban sediments. V. Magar and M. Kelley, Eds., Proceed. 7th Int'l. Symp. on In Situ and On-Site Bioremediation, Orlando, FL, ISBN 1-57477-139-6, Battelle Press, Columbus, OH, Paper No. I-06, 8 pp.

22. Stout, S.A., Uhler, A., Emsbo-Mattingly, S.J. (2003) Characterization of PAH sources in sediments of the Thea Foss/Wheeler Osgood Waterways, Tacoma, Washington. Soil and Sediment Contamination. 12(6): 815-834.

23. Stout, S.A. and Uhler, A.D. (2003) Distinguishing "background" hydrocarbons from contamination using chemical fingerprinting. Environ. Claims. J., 15(2): 241-259.

24. Stout, S.A., Uhler, A.D., McCarthy, K.J. and Emsbo-Mattingly, S.D. (2002) Chemical Fingerprinting of Hydrocarbons. In: Introduction to Environmental Forensics, (B. Murphy and R. Morrison, Eds.), Academic Press, New York, p. 135-260.

25. Wakeham, S.G., Schaffner, C., and Giger, W. (1980a). Polycyclic aromatic hydrocarbons in recent lake sediments—I. Compounds having anthropogenic origins. Geochim. Cosmochim. Acta 44, 403-413.

26. Wang, Z. and Fingas, M. (1999) Identification of the source(s) of unknown spilled oils. Paper #162 In 1999 International Oil Spill Conference. 9 pp.

27. Wang, Z., Fingas, M., and Page, D.S. (1999). Oil spill identification. J. Chrom. A 842, 369-411.

28. Youngblood, W.W. and Blumer, M. (1975). Polycyclic aromatic hydrocarbons in the environment: homologous series in soils and recent marine sediments. Geochim. Cosmochim. Acta 39, 1303-1314.

29. Naval Facilities Engineering Command. 2003. Implementation guide for assessing and managing contaminated sediments at Navy Facilities. Technical Report UG-2052-ENV.

30. Naval Facilities Engineering Command. 2003. A user's guide for determining the sources of contaminated sediment:. A demonstration study: Sources of PAH in sediments in the vicinity of the Norfolk Naval Shipyard, Elizabeth River, Norfolk, VA. Technical Report 1907.

31. Naval Facilities Engineering Command. 2003. Implementation guide for assessing and managing contaminated sediments at Navy Facilities. Technical Report UG-2052-ENV.

32. Naval Facilities Engineering Command. 2003. A user's guide for determining the sources of contaminated sediment:. A demonstration study: Sources of PAH in sediments in the vicinity of the Norfolk Naval Shipyard, Elizabeth River, Norfolk, VA. Technical Report 1907.

33. US EPA. 1991. Guidance for water quality based decisions: the TMDL process. EPA 440/4-91-001. U.S. Environmental Protection Agency, Washington, DC.

34. US EPA. 2003. Total Maximum Daily Loads for PCBs for Zones 2-5 of the Tidal Delaware River. Prepared by the Delaware River Basin Commission, West Trenton, NJ.

35. Arthur D. Little. 1994. Distribution of chemical contaminants and acute toxicity in Delaware River Estuary sediments. Submitted to U.S. EPA and Delaware River Basin Commission.

36. United States Geologic Survey. 2004. Water quality in the Delaware River Basin. Pennsylvania, New Jersey, New York, and Delaware, 1998-2001. Circular 1227. Reston, VA.

I, declare under penalty of perjury that the foregoing is true and correct.

Executed on: September 8, 2005

Allen D. Uhler

## CERTIFICATE OF SERVICE

I Meagan Ward Cascio, hereby certify that on September 9, 2005 I electronically filed **DECLARATION OF DR. ALLEN D. UHLER** with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

C. Scott Reese, Esquire
Cooch & Taylor
824 N. Market Street
Suite 1000
P.O. Box 1680
Wilmington, DE  19899-1680

I also certify that copies were caused to be served on September 9, 2005 upon the following in the manner indicated:

**BY HAND DELIVERY:**

C. Scott Reese, Esquire
Cooch & Taylor
824 N. Market Street
Suite 1000
P.O. Box 1680
Wilmington, DE  19899-1680

**BY FEDERAL EXPRESS**

Mitchell S. Bernard, Esquire
Nancy S. Marks, Esquire
Amelia Toledo, Esquire
Natural Resources Defense Council
40 West 20th Street
New York, New York  10011

_____*/s/ Megan Ward Cascio*_____
Megan Ward Cascio (#3785)
1201 N. Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
mcascio@mnat.com
Attorneys for Defendant