IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL, INC. | ) | |
| | ) | |
| and DELAWARE AUDUBON SOCIETY, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 88-263-SLR |
| v. | ) | |
| | ) | |
| TEXACO REFINING AND MARKETING, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**SUPPLEMENTAL DECLARATION OF MR. MICHAEL H. SALAZAR**

I, MICHAEL H. SALAZAR, hereby declare the following:

1. I respectfully submit this supplemental declaration in response to the declaration of Dr. Robert Livingston ("Livingston Reply Dec.") proffered by plaintiff NRDC in opposition to defendant's motion for relief from judgment.

2. Dr. Livingston states a conclusion, without further support, that the absence of *Rangia* at five Triad sites is evidence of impact caused by PAHs from the refinery. (Livingston Reply Dec. at 17 & 19.) This conclusion is not scientifically sound or reasonable. . It ignores the natural and anthropogenic conditions in the sampling area as described by Dr. Burton, as well as the distribution of PAHs with the refinery signature as described by Dr. Uhler.

3. As a scientist experienced with bivalves, I would not expect an even distribution of *Rangia*, even under pristine conditions. Furthermore, I would expect that *Rangia* would be absent from many different areas within the study area due to natural factors alone. These factors would include but not limited to temperature, salinity, dissolved oxygen, pH, current speed, turbidity, sediment grain size, and sediment compactness.

4. If Dr. Livingston were correct that the absence of *Rangia* at five Triad sites is evidence of impact caused by PAHs from the refinery, I would expect a direct relationship between the absence of *Rangia* and the highest concentrations of PAHs with the refinery signature if they were the sole cause of their absence. This was not the case.

5.      I was surprised that Dr. Livingston did not consider the effect of natural factors in controlling the distribution of *Rangia* within the study area. Most bivalve biologists would consider the effects of natural and anthropogenic factors when theorizing as to the causal factors controlling *Rangia* distribution in the study area. As an example, I agreed with the explanation provided by Dr. Burton that, "It was felt that the habitats with insufficient clams [for collection] may not have had sediment preferred by clams. Some of the [collection] sites had a very high sand content and some of the sites had mostly hard clay." (Burton Dec., Exh. 4 at 1.) The presence of hard clay alone could be enough to preclude the presence of *Rangia*. Accordingly, I was comfortable that collecting *Rangia* from nearby mud flats would provide the best substitute for the collection of *Rangia* at each Triad site.

5.      It is my expert opinion that the other five locations from which *Rangia* were collected were representative of each nearby Triad site. Dr. Livingston attempts to question whether the *Rangia* collection sites, which averaged three-quarters of a kilometer from a Triad site, could be representative of that site. (Livingston Reply Dec. ¶ 14.) I find this criticism unreasonable based on the scope of the overall study, which encompassed more than twenty (20) linear kilometers.

6.      I was very satisfied by Dr. Burton's efforts to locate clam beds within the 100 by 100 meter grid station established for each of the fifteen (15) Triad (*i.e.*, sites identified in the Scope of Work) sampling sites, or as close a possible to each site. However, sufficient densities of clams were present at only nine (9) stations at or near the fifteen (15) Triad sites; thus, only nine (9) clam stations were established. Four (4) of the clam stations were at exactly the same stations as the Triad stations, while the remaining five (5) stations were within close proximity of the Triad stations, or located between two (2) Triad sites.

7.      Therefore, it is my expert opinion that the results of the bivalve study provided scientifically sound estimates of bioavailability at the locations where the Triad Studies were conducted. In my opinion, the statement in the Livingston Reply Declaration that the distance of the collection sites from the Triad site "invalidates use of the *Rangia* data for the purpose employed by Texaco" is incorrect. (*Id.* ¶ 14.)

## VERIFICATION

I, Michael H. Salazar, declare under penalty of perjury that the foregoing is true and correct. Executed on _26 October 2005_.

_____
Michael H. Salazar

20.

## CERTIFICATE OF SERVICE

I, Samuel T. Hirzel, II, hereby certify that on October 26, 2005 I electronically filed **SUPPLEMENTAL DECLARATION OF MR. MICHAEL H. SALAZAR** with the Clerk of Court using CM/ECF, which will send notification of such filing(s) to the following:

> C. Scott Reese, Esquire
> Cooch & Taylor
> 824 N. Market Street
> Suite 1000
> P.O. Box 1680
> Wilmington, DE 19899-1680

I also certify that copies were caused to be served on October 26, 2005 upon the following in the manner indicated:

### BY HAND DELIVERY:

C. Scott Reese, Esquire
Cooch & Taylor
824 N. Market Street
Suite 1000
P.O. Box 1680
Wilmington, DE 19899-1680

### BY FEDERAL EXPRESS

Mitchell S. Bernard, Esquire
Nancy S. Marks, Esquire
Amelia Toledo, Esquire
Natural Resources Defense Council
40 West 20th Street
New York, New York 10011

_____
Samuel T. Hirzel, II (#4415)
Morris, Nichols, Arsht & Tunnell
1201 North Market Street
P. O. Box 1347
Wilmington, DE 19899-1347
mcascio@mnat.com
Attorneys for Defendant