IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NATURAL RESOURCES DEFENSE )
COUNCIL, INC., and DELAWARE )
AUDUBON SOCIETY, )
 )
      Plaintiffs, ) Civil Action No.
 ) 88-263-SLR
      v. )
 )
TEXACO REFINING AND MARKETING, )
INC., )
 )
      Defendant. )

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

            C. Scott Reese, Esquire (DE Bar ID #2036)
            Cooch and Taylor, P.A.
            824 N. Market Street, Suite 1000
            P.O. Box 1680
            Wilmington, Delaware 19899-1680
            (302) 984-3811
            *Attorney for Plaintiffs*

OF COUNSEL:

Mitchell S. Bernard, Esquire
Nancy S. Marks, Esquire
Natural Resources Defense Council, Inc.
40 West 20th Street
New York, NY 10011
(212) 727-2700

DATED: November 6, 2007

## **TABLE OF CONTENTS**

|  | Page |
|---|---|
| INTRODUCTION | 1 |
| NATURE AND STAGE OF THE PROCEEDINGS | 1 |
| SUMMARY OF THE ARGUMENT | 2 |
| STATEMENT OF FACTS | 2 |
| ARGUMENT | 3 |
|     I. PLAINTIFFS ARE ENTITLED TO AN AWARD OF FEES AND COSTS | 3 |
|     II. THE AMOUNT OF ATTORNEYS' FEES PLAINTIFFS REQUEST IS REASONABLE | 4 |
|         A. Plaintiffs' Number of Billable Hours Is Reasonable | 5 |
|         B. The Hourly Rates Plaintiffs Seek Are Reasonable | 8 |
|     III. THE AMOUNT OF LITIGATION EXPENSES PLAINTIFFS REQUEST IS REASONABLE | 10 |
|         A. Expert Witness Fees and Costs | 10 |
|         B. Other Costs | 11 |
| CONCLUSION | 12 |

## **TABLE OF AUTHORITIES**

                                                                                       Page

**CASES**

Bates v. Bd. of Ed. of the Capital Sch. Dist.
    No. 97-394-SLR, 2000 WL 1292677 (Aug. 29, 2000) . . . . .     9

Blackman v. Columbia
    397 F. Supp. 2d 12 (D.D.C. 2005) . . . . . . . . . . . . .     6

Blum v. Stenson
    465 U.S. 886 (1984) . . . . . . . . . . . . . . . . . . .     5, 8

Burris v. Richards Paving, Inc.
    472 F. Supp. 2d 615 (D. Del. 2007) . . . . . . . . . . . .     6

Chambers v. NASCO
    501 U.S. 32 (1991) . . . . . . . . . . . . . . . . . . . .     4

Chrapliwy v. Uniroyal, Inc.
    670 F.2d 760 (7th Cir. 1982) . . . . . . . . . . . . . . .     8

Cooper v. U.S. R.R. Retirement Bd.
    24 F.3d 1414 (D.C. Cir. 1994) . . . . . . . . . . . . . .     7

Cunningham v. City of McKeesport
    753 F.2d 262 (3d Cir. 1985) . . . . . . . . . . . . . . .     5

Halderman v. Pennhurst State Sch. & Hosp.
    49 F.3d 939 (3d Cir. 1995) . . . . . . . . . . . . . . . .    10

Hensley v. Eckerhart
    461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . .     5, 6

Hutto v. Finney
    437 U.S. 678 (1978) . . . . . . . . . . . . . . . . . . .     4

Interfaith Cmty. Org. v. Honeywell Int'l, Inc.
    426 F.3d 694 (3d Cir. 2005) . . . . . . . . . . . . . . .     4, 6, 7, 8

Interfaith Cmty. Org. v. Honeywell Int'l, Inc.
    336 F. Supp. 2d 370 (D.N.J. 2004), *aff'd in part,*
    *vacated in part*, 426 F.3d 694 (3d Cir. 2005) . . . . . . . . . .   11

Lanni v. New Jersey
    259 F.3d 146 (3d Cir. 2001) . . . . . . . . . . . . . . . .   8

McKnatt v. Delaware
    369 F. Supp. 2d 521 (D. Del. 2004) . . . . . . . . . . . . .   5

Pennsylvania v. Del. Valley Citizens' Council
   for Clean Air
    478 U.S. 546 (1986) . . . . . . . . . . . . . . . . . . .   4

Planned Parenthood of Cent. N.J. v. Attorney Gen.
   of State of N.J.
    297 F.3d 253 (3d Cir. 2002) . . . . . . . . . . . . . . .   6

Pub. Interest Research Group of N.J., Inc. v. Windall
    51 F.3d 1179 (3d Cir. 1995) . . . . . . . . . . . . . . .   3, 7

Robin Woods Inc. v. Woods
    28 F.3d 396 (3d Cir. 1994) . . . . . . . . . . . . . . . .   4

Rode v. Dellarciprete
    892 F.2d 1177 (3d Cir. 1990) . . . . . . . . . . . . . . .   5, 8

Steiner v. Hercules Inc.
    835 F. Supp. 771 (D. Del. 1993) . . . . . . . . . . . . .   10

Student Pub. Interest Research Group v. AT & T Bell Labs.
    842 F.2d 1436 (3d Cir. 1988) . . . . . . . . . . . . . . .   8

**STATUTE**

Clean Water Act, 33 U.S.C. § 1365(d) . . . . . . . . . . . . . .   3, 10

## INTRODUCTION

Plaintiffs Natural Resources Defense Council, Inc. ("NRDC") and Delaware Audubon Society respectfully submit this memorandum of law in support of their motion for attorneys' fees and costs for work in connection with plaintiffs' Third Motion to Enforce the Court's judgments against defendant Texaco Refining and Marketing, Inc. ("Texaco"). That motion to enforce, which the parties settled with Texaco's agreement to pay $2.25 million for projects benefiting the Delaware River environment, marked the final skirmish in plaintiffs' nineteen-year battle to hold Texaco accountable for discharging toxic pollution to the River from its refinery in Delaware City, Delaware.

In addition to this memorandum, plaintiffs' motion includes the declaration of their lead counsel, Mitchell S. Bernard ("Bernard Declaration") and the exhibits thereto. The Bernard Declaration explains in detail the precise amount of fees and costs plaintiffs seek to recover, and the rationale and calculations supporting plaintiffs' request.

In this memorandum, plaintiffs discuss the legal underpinnings of their motion. Because Texaco does not dispute plaintiffs' entitlement to fees and costs, this memorandum focuses on demonstrating that the amounts plaintiffs seek to recover are reasonable.

## NATURE AND STAGE OF THE PROCEEDINGS

As set forth in more detail in the Bernard Declaration at ¶¶ 4-12, plaintiffs filed their Third Motion to Enforce, like the previous two, to compel Texaco to comply with the Court's repeated commands since 1992 to assess the

environmental effects of the refinery's excessive discharges of pollutants. The parties settled plaintiffs' motion on September 30, 2007, resolving all substantive claims remaining in this litigation. *See id.* Ex. 1 (Settlement Agreement). On October 18, 2007, the Court entered an order dismissing this action, retaining jurisdiction solely to adjudicate plaintiffs' motion for attorneys' fees and costs. D.I. 368.

## SUMMARY OF ARGUMENT

Plaintiffs are entitled to an award of reasonable fees and costs – both under the Clean Water Act and as conceded by Texaco in the Settlement Agreement. Plaintiffs request compensation for a reasonable number of hours, having exercised billing judgment to eliminate any unnecessary time. Given that Texaco utilized counsel from Washington, D.C., plaintiffs believe it is fair to compensate plaintiffs at Washington, D.C. rates (which are lower than the rates in New York City, where plaintiffs' lead attorney practices, but slightly higher than those in Wilmington). The Washington, D.C. rates proposed by plaintiffs are reasonable, as are the Wilmington rates plaintiffs request in the alternative, in the event the Court finds rates in that market to apply. The costs plaintiffs seek, including fees paid to their single expert, are also justified. The excellent results plaintiffs achieved and Texaco's repeated defiance of this Court's orders further support the full award plaintiffs request.

## STATEMENT OF FACTS

For a detailed statement of pertinent facts, plaintiffs respectfully refer the Court to the Bernard Decl. ¶¶ 4-12, 43-72.

2

## ARGUMENT

I.  PLAINTIFFS ARE ENTITLED TO AN AWARD OF FEES AND COSTS.

The Clean Water Act provides that a court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). Texaco does not contest plaintiffs' entitlement to an award of fees and costs for work on their Third Motion to Enforce, though it may challenge the amount of such an award. Bernard Decl. Ex. 1 ¶ 5 ("Defendant will not contest Plaintiffs' entitlement to an award of fees and costs, though it preserves all rights to challenge the amount of fees and costs Plaintiffs may seek to recover . . . .").

Plaintiffs are plainly a prevailing party, having more than achieved some of the benefits sought in the litigation. *See Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir. 1995) ("*Windall*"). In directing $2.25 million from Texaco to projects that will repair and enhance the local environment subject to the refinery's pollution, plaintiffs have realized the two principal goals of this litigation: to address ecological harm to the River, and to hold Texaco accountable for that harm. Bernard Decl. ¶¶ 71-75. It is also particularly appropriate to award plaintiffs their fees and costs here, where plaintiffs' work on the motion was necessitated and made more taxing by Texaco's persistent refusal to abide by this Court's orders. *Id.* ¶¶ 4-11, 43-70.

As an additional basis for awarding plaintiffs their fees for all work performed in prosecuting the motion to enforce, the Court may look to its inherent

3

powers, independent of the Clean Water Act, to award fees as a sanction for Texaco's bad-faith litigation-related conduct, including disobedience of a court order. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991); *see also Hutto v. Finney*, 437 U.S. 678, 690 n.14 (1978) ("An equity court has the unquestioned authority to award attorney's fees against a party who shows bad faith by . . . hampering enforcement of a court order."). Under this doctrine, the Court has the discretion "to vindicate itself and compensate" the moving party "by requiring [the opposing party] to pay for all attorney's fees" that were incurred in the litigation that resulted from the bad-faith conduct. *Chambers*, 501 U.S. at 57; *see also Robin Woods Inc. v. Woods*, 28 F.3d 396, 400 (3d Cir. 1994) (holding that a court may award attorney's fees in contempt litigation, where defendant violated an injunction, even if the disobedience is not willful). All of the work plaintiffs performed on the Third Motion to Enforce was necessitated by Texaco's bad-faith conduct. Bernard Decl. ¶¶ 43-70.[1]

II.  **THE AMOUNT OF ATTORNEYS' FEES PLAINTIFFS REQUEST IS REASONABLE.**

The Third Circuit has approved the "lodestar" approach to calculating awards under fee-shifting environmental statutes. *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) ("*Honeywell*"); *see also Pennsylvania. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 563-65 (1986). "A strong presumption that the lodestar figure – the product of

---

[1] The Court appears already to have availed itself of this equitable power in ordering Texaco to bear all costs associated with the anticipated hearing on the motion "because defendant did not conduct a caged bivalve study as mandated by the . . . Stipulated Order (D.I. 296), nor did defendant confer with the court or opposing counsel before conducting tests not specifically mandated in said order." D.I. 328 ¶ 2.

4

reasonable hours times a reasonable rate – represents a 'reasonable' fee is wholly consistent with the rationale behind the usual fee-shifting statute . . . ." *Id.* at 565. *See also Blum v. Stenson*, 465 U.S. 886, 888 (1984) ("The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." (citing *Hensley v. Eckerhart*, 461 U.S. 424 (1983))). If and to the degree Texaco seeks an adjustment to the lodestar, it must carry the burden of proving that such an adjustment is necessary. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (citing *Cunningham v. City of McKeesport*, 753 F.2d 262, 268 (3d Cir. 1985)).

    A.    <u>Plaintiffs' Number of Billable Hours Is Reasonable.</u>

Because plaintiffs achieved the substantive goals of their Third Motion to Enforce, they should recover fees for all hours their counsel reasonably expended. *Hensley*, 461 U.S. at 435 ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . ."). Based on contemporaneous time records, plaintiffs have documented their hours as deemed proper by this Court, with "itemized records indicating the date legal work was performed, the person performing the work, the nature of the work, the number of hours spent, and the hourly rate charged for the work." *McKnatt v. Delaware*, 369 F. Supp. 2d 521, 525 (D. Del. 2004) (Robinson, C.J.). *See*

Bernard Decl. ¶¶ 14-17 and Exs. 3 (attorney timesheets) and 5 (hourly rates in D.C. and Wilmington).[2]

To establish a reasonable number of hours, "[t]he prevailing party's counsel . . . should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Burris v. Richards Paving, Inc.*, 472 F. Supp. 2d 615, 621 (D. Del. 2007) (Robinson, C.J.) (citing *Hensley*, 461 U.S. at 434). As described in detail in the Bernard Declaration, plaintiffs believe they litigated this case economically, particularly when viewed in light of Texaco's resistance to compliance with Court orders and heavy reliance on experts. Bernard Decl. ¶¶ 16, 21, 22. Nonetheless, in an exercise of billing judgment, plaintiffs have eliminated from this fee request 136.3 hours considered to be excessive or duplicative. Bernard Decl. ¶ 17 and Ex. 3 (time records, comparison of "Recorded Hours" to "Billed Hours").

Plaintiffs have also reduced by half (or by 23.9) all remaining hours spent solely on travel, in accord with the Third Circuit's rule that attorneys may be compensated for their travel time at a rate consistent with practice in the community whose market provides the rates sought. *Honeywell*, 426 F.3d at 711 (citing *Planned Parenthood of Cent. N.J. v. Attorney Gen. of State of N.J.*, 297 F.3d 253, 267-68 (3d Cir. 2002)); Bernard Decl. ¶ 18. Travel time in the Washington, D.C. market (the market whose rates plaintiffs seek, as discussed below) is normally compensable at half the normal rate. *See Blackman v.*

---

[2] Because plaintiffs are requesting two alternative sets of rates, as explained below, the rates appear on summaries, rather than on the time records themselves. *See* Bernard Decl., Ex. 8.

6

*Columbia*, 397 F. Supp. 2d 12, 15 (D.D.C. 2005) (citing *Cooper v. U.S. R.R. Retirement Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994)).[3]

Similarly, plaintiffs have reduced by one-quarter (or by 34.3) all hours spent preparing this fee petition. While the Third Circuit has held that litigation of a fee petition is compensable under the Clean Water Act, it has directed district courts to consider whether the same degree of expertise and skill is required as for the underlying dispute. *Windall*, 51 F.3d at 1190. Plaintiffs believe it is reasonable in this case to recover fees for preparation of this petition at seventy-five percent of whatever market rate the Court applies. Bernard Decl. ¶ 18.[4]

Beyond these specific hour reductions, plaintiffs reduced the remaining hours of each attorney and paralegal an additional ten percent (or a total of 153.4 hours). This adjustment should more than account for any redundant or inefficient work. Bernard Decl. ¶ 19. With these reductions, the total number of attorney hours for which plaintiffs seek fees is 1381, which is twenty percent less than the number of hours plaintiffs' attorneys recorded. Bernard Decl. ¶ 20 and Ex. 3. A leading environmental practitioner who reviewed plaintiffs' time records *before* plaintiffs reduced any hours believes those records reflect a reasonable number of hours for the work performed. Bernard Decl., Ex. 6 (Declaration of Michael B. Gerrard).

---

[3] Because plaintiffs are proposing two sets of rates, they simplified calculations by reducing travel hours by half, rather than calculating all travel time at half the rate for each of the two markets. The result is mathematically identical. Bernard Decl. ¶ 18. To the extent plaintiffs' attorneys "did actual work on this case while traveling," they treated such time in the same manner as non-travel hours. *See Honeywell*, 426 F.3d at 711 n.15; Bernard Decl. ¶ 18.

[4] As with travel time, plaintiffs have simplified calculations by reducing fee-related hours by twenty-five percent, so that the discount will automatically apply regardless of which hourly rates the Court selects.

B.   The Hourly Rates Plaintiffs Seek Are Reasonable.

Plaintiffs seek appropriate rates for their counsel. A reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community. *Blum*, 465 U.S. at 895. The Court should assess the experience and skill of the attorneys and compare their rates to those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Rode*, 892 F.2d at 1183 (citing *Student Pub. Interest Research Group v. AT & T Bell Labs.*, 842 F.2d 1436, 1447 (3d Cir. 1988); *Blum*, 465 U.S. at 895 n.11). The current market rate must be used, which is the rate at the time of the fee petition, not the rate at the time the services were performed. *Lanni v. New Jersey*, 259 F.3d 146, 149-50 (3d Cir. 2001) (citing *Rode*, 892 F.2d at 1183, 1188-89) (other citations omitted).

With some exceptions, discussed at length in the *Honeywell* decision, the relevant market is the one where the court sits, pursuant to the "forum rate rule." *See Honeywell*, 426 F.3d at 703-07. If the moving party can show the need for special expertise, or when local counsel are unwilling to handle a case, the court may award fees based on prevailing rates in the attorney's home community. *Id.* at 705.

While plaintiffs believe they might successfully argue for these exceptions, they do not seek New York City rates for their two most senior counsel, for whom New York is home. Rather, plaintiffs request compensation at Washington, D.C. rates, the market from which Texaco chose its lawyers to defend against plaintiffs' Third Motion to Enforce. *See Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760,

768 n.18 (7th Cir. 1982) (defendant's choice of out-of-town counsel is relevant to the reasonableness of plaintiffs' representation by out-of-town counsel). Plaintiffs believe this is fair under the unique circumstances of this long-running case. It would have made no sense, and would, in fact, have been far less efficient, for plaintiffs to hire Wilmington counsel (even if any had been available, willing to take on the litigation without payment, and willing to advance more than $136,000 in expert and other out-of-pocket costs) than to continue with the counsel who have litigated this case from the start. Bernard Decl., Exs. 9, 10 (setting forth costs).

Finally, plaintiffs note that this Court, in a case under fee-shifting statutes, has appeared to award out-of-forum rates based solely on the plaintiff's choice of out-of-town counsel. *See Bates v. Bd. of Ed. of the Capital Sch. Dist.*, No. 97-394-SLR, 2000 WL 1292677 (Aug. 29, 2000), at *5 (Robinson, C.J.) (dismissing defendant's objection to supporting materials relating to Philadelphia, not Wilmington, as being "without merit," because "Plaintiff sought representation in the Philadelphia legal community, and the rates charged her should be assessed with reference to that community.").

The Washington, D.C. rates sought by plaintiffs are reasonable given the education and experience of plaintiffs' counsel and paralegal, and are, in fact, "considerably below" those charged by others of similar qualifications in Washington, D.C. Bernard Decl. ¶ 28 and Exs. 4 (attorney resumes), 5 (Washington, D.C. rates), and 6 (Gerrard Decl.).

9

In the event the Court selects Wilmington as the appropriate market, plaintiffs have proposed market rates that a leading Delaware environmental practitioner describes as reasonable, based on his familiarity with local practice, as well as his review of plaintiffs' motion papers for the Third Motion to Enforce and the resumes of plaintiffs' counsel and paralegal. Bernard Decl. ¶ 29 and Exs. 5 (Wilmington rates) and 7 (Declaration of F. Michael Parkowski).

III. THE AMOUNT OF LITIGATION EXPENSES PLAINTIFFS REQUEST IS REASONABLE.

Pursuant to the Clean Water Act, which permits recovery of "costs of litigation (including . . . expert witness fees)," plaintiffs seek to recover reasonable costs necessary to litigate the Third Motion to Enforce. 33 U.S.C. § 1365(d).

A. Expert Witness Fees and Costs.

Plaintiffs seek to recover the full amount of expert witness fees ($105,883) and costs ($6,526.98) they paid to Dr. Robert Livingston. Bernard Decl. ¶¶ 32-39 and Ex. 9 (expert fees and costs). To be compensable, expert witness fees and costs must be necessary. *Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942-43 (3d Cir. 1995). The moving party must give the court a basis to evaluate the nature of the work done, the quantity and quality of the work, the reasonableness of the rate, the necessity for the work, and the nature of its contribution to plaintiffs' case. *Steiner v. Hercules Inc.*, 835 F. Supp. 771, 794 (D. Del. 1993).

Dr. Livingston was critical to plaintiffs' success in their Third Motion to Enforce. His prior involvement in the case was crucial to his role in this motion and gave him the background to work efficiently. Bernard Decl. ¶ 33.

10

Dr. Livingston was plaintiffs' sole expert in opposition to Texaco's eight. *Id.* ¶¶ 12, 38. Even though he has forty years of experience, he charged a modest rate, far less than that of several of Texaco's less experienced experts. *Id.* ¶¶ 33, 37. This Court has repeatedly found Dr. Livingston to be a credible scientist, and has referred to and relied on his testimony in previous stages of this case, including those relating specifically to the requirements of the study at issue in plaintiffs' Third Motion to Enforce. *Id.* ¶ 34. Given that Dr. Livingston's work was vital to plaintiffs' success and necessary to rebut Texaco's experts, the Court should reimburse his reasonable fees in full. *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 336 F. Supp. 2d 370, 398 (D.N.J. 2004), *aff'd in relevant part*, 426 F.3d 694 (3d Cir. 2005).

Similarly, the Court should reimburse plaintiffs for Dr. Livingston's travel and other incidental costs necessary to his participation in this litigation. *Id.*; Bernard Decl. ¶ 39 and Ex. 9 (expert costs).

B.  Other Costs

Plaintiffs request reimbursement of other costs totaling $23,859.54, nearly three-quarters of which are for deposition transcripts. These out-of-pocket costs include necessary travel and related expenditures for NRDC attorneys. Bernard Decl. ¶¶ 40-42 and Ex. 10. Consistent with reductions applied to attorney fees, plaintiffs do not seek reimbursement for expenses related to activities judged to be duplicative, such as extra lawyers' attendance at depositions. *Id.* ¶ 41. Nor do plaintiffs seek any reimbursement for local counsel fees or NRDC attorneys'

meals. *Id.* Plaintiffs believe the out-of-pocket costs it seeks were necessary to conduct the litigation. *Id.* ¶ 42.

## CONCLUSION

For the reasons set forth above and in the Bernard Declaration, plaintiffs seek to recover the following for their work on this case between February 23, 2000 and November 1, 2007:

Attorneys' Fees:    $606,477.50 (D.C.)         $555,380.00 (Wilmington)

Expert Fees/Costs: $112,409.98                $112,409.98

Other Costs:        $ 23,859.54                $ 23,859.54

Total:              $742,747.02                $691,649.52.

*See* Bernard Decl. ¶ 77 and Ex. 14.

**COOCH AND TAYLOR, P.A.**

/s/ C. Scott Reese
C. Scott Reese (DE Bar ID #2036)
824 N. Market Street, Suite 1000
Wilmington, Delaware 19801
(302) 984-3811
*Attorney for Plaintiffs*

OF COUNSEL:

Mitchell S. Bernard, Esquire
Nancy S. Marks, Esquire
Natural Resources Defense Council, Inc.
40 West 20th Street
New York, NY 10011
(212) 727-2700

DATE: November 6, 2007